UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| TRONDHEIM CAPITAL PARTNERS, LP | No.: 20-cv-06286 |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| WILLIAM H. SADLIER, INC., | |
| Defendant. | |

TRONDHEIM CAPITAL PARTNERS, LP ("Plaintiff" or "Trondheim"), as and for its Complaint against WILLIAM H. SADLIER, INC. ("Sadlier" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action to enforce its shareholder rights as a minority and oppressed shareholder of Defendant. Plaintiff has been denied its basic statutory and common law shareholder rights of inspection, all while Defendant delays disclosing and conceals material facts that shareholders rely on in the purchase of Defendant's securities. Defendant essentially runs a "jobs program" to benefit family and insiders at the expense of the financial health of the company and the minority shareholder's investments.

2.  Plaintiff seeks enforcement of its shareholder rights, and redress for violations of federal securities laws.

## THE PARTIES

3.  Plaintiff Trondheim is a Delaware limited partnership headquartered in Arizona and those facts were true when the causes of action pleaded herein accrued. Each limited and general partner in Trondheim is a citizen of a state other than New York and no partner in Trondheim was a citizen of New York when the causes of action pleaded herein accrued or at present.

4.	Defendant is a New York corporation headquartered in New York, New York and those facts were true when the causes of action pleaded herein accrued.

## JURISDICTION AND VENUE

5.	This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties and the amount in controversy exceeds $75,000.00.[1]  In addition, Plaintiff has brought a claim arising under the Securities Exchange Act of 1934, which gives this Court federal question jurisdiction.  In the alternative, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claims not otherwise satisfying the amount in controversy and/or not arising under federal law because they are related to the same case or controversy with the parties and claims that do satisfy the amount in controversy and/or the federal question claims.

6.	Personal jurisdiction over the Defendant is proper under New York CPLR § 301.  This Court has personal jurisdiction over Defendant, who, upon information and belief, is headquartered and incorporated in New York and regularly conducts business in New York.

7.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant is headquartered in this district.

## FACTS

A. Overview

8.	Plaintiff Trondheim is a shareholder of Defendant Sadlier.

9.	Defendant Sadlier is a New York publishing company with a storied, century-plus history that has—sadly—seen better days.  Its most recently reported results for the calendar year

---

[1] For the shareholder books and records claim, "the proper measure of the amount in controversy is the value of plaintiff's shares," which is a multiple of $75,000.  *See*, *Rockwell v. SCM Corp.*, 496 F. Supp. 1123 (S.D.N.Y. 1980).

2019, which are now seven months old, reported/showed cumulative losses and substantially negative cash flow for the years that ended 2017, 2018, and 2019.  Despite the deteriorating results, collapsing share price, and repeated requests by Plaintiff Trondheim, Sadlier refuses to provide details on the worsening trends or provide any plan to reverse them.

10. Sadlier spent $28 million on capital expenditures over the six years from 2014 through 2019, which exceeded the total cash flow generated by the business by $1 million. Despite this massive and unexplained investment, revenue declined by 23% from $56 million in 2014 to $44 million in 2019.  By contrast, in 2009, Sadlier had net income of $4 million and cash flow of about $6.5 million on sales of $53 million.   The deteriorating results are long-running and accelerating.  For years the business has operated without generating any economic returns for shareholders.

11. Sadlier has offered minority shareholders such as Trondheim little by way of explanation for the deterioration in performance or the especially poor results in 2017-19. Defendant's annual reports do not provide "Management Discussion & Analysis" of what happened, nor was there anything to indicate that management has a plan for returning the company to profitability or generating cash flow again.  There is no indication of how management plans to use its currently remaining capital or cash flows that come in subsequently if they do return.

12. Sadlier holds itself out as a "family" company, and indeed employs an eyebrow-raising number of family members, but solicits and relies on diffuse outside ownership and is listed on the OTC-market and trades under the ticker symbol SADL

13. The question of how management plans to use the remaining capital is of grave concern to Plaintiff.  The current bid for shares of Sadlier stock is $31.80 as of July 31, 2020 and

there were 699,473 shares outstanding at the end of 2019.  Defendant's market capitalization is thus approximately $22 million, which is the same as the net current assets (i.e. cash, receivables, and inventory less liabilities) it had at the end of 2019.  That means Sadlier has zero "enterprise value," which means that there is no bidder in the market for Sadlier stock who will ascribe any positive value to Sadlier's publishing business.

14. The trading price implies that Sadlier would be worth more dead than alive.  The market has no confidence in Sadlier's management and neither does Plaintiff.  Defendant refuses to reveal a plan if the business continues to lose money and has expressed no plan to turn the business around.

15. Trondheim, as a shareholder of Sadlier, has a right to review Sadlier's corporate books and records, to learn the reasons for Sadlier's deteriorating results and to formulate plans to reverse them. Trondheim has been thwarted in these attempts by Sadlier's management, who are also the controlling shareholders and directors of Sadlier.  This lawsuit arises from those oppressive tactics that prevent Trondheim from participating in corporate governance and from protecting and monitoring its investment.

**B. Pertinent Factual Background**

16. Plaintiff Trondheim has been a shareholder of Sadlier since August 2017, and currently owns 4,500 shares which is equal to almost one (1) percent of the 699,573 shares that were outstanding as of December 31, 2018.  The general partner of Trondheim is Trondheim Capital, LLC, which is managed by Colin Peterson ("Mr. Peterson").

17. During a review of Sadlier's results in 2017, Mr. Peterson noticed that the envelope containing the Sadlier annual report did not include a proxy statement.  Since Sadlier was soliciting

proxies for an annual meeting to be held on June 29, 2017, it was unusual that there would be no proxy statement.

18. Mr. Peterson attempted to determine why no such statement had been included and wrote to Sadlier on May 29, 2017 to request copies of any proxy statement. He also requested the annual reports for the years 2013, 2014, and 2015 and any proxy statements and/or shareholder meeting notices of Sadlier for those periods.

19. Sadlier ignored the May 29, 2017 letter.

20. Mr. Peterson sent a follow up letter to his May 29, 2017 letter on June 23, 2017.

21. On June 27, 2017, Mr. Peterson received an email from Alissa Arbeiter ("Ms. Arbeiter") which said that "in order to provide annual reports, I will need proof of ownership from the shareholder you manage."

22. Mr. Peterson responded to Ms. Arbeiter's request by emailing a copy of the notice of annual meeting that he had received from the company.

23. Ms. Arbeiter then emailed him a copy of Sadlier's 2015 annual report but not the other annual reports which he had requested.

24. On July 6, 2017, Mr. Peterson wrote to follow up again on the remaining items from his request. He also requested Sadlier's current Bylaws as well as the minutes of its past three annual meetings.

25. On July 19, 2017, Mr. Peterson received a reply to his letter from Ms. Arbeiter on Sadlier letterhead. Without providing any legal basis for doing so, this letter said that Sadlier "respectively [sic] decline your request to send such information." Ms. Arbeiter said that "should you desire to make an appointment to visit our corporate offices at 9 Pine Street in New York City

during normal business hours to review such information, please let me know. We can schedule a mutually agreeable time and date."

26. On July 27, 2017, Mr. Peterson responded to Sadlier's letter. Mr. Peterson pointed out that he disagreed with Sadlier's stated legal position that it could refuse to send via mail or email the materials that he had requested. Nonetheless, Mr. Peterson accepted Sadlier's offer to pick up copies of the materials in person. Mr. Peterson requested that Sadlier also provide certain additional items during his in-person visit.

27. On August 13, 2017, Mr. Peterson received a reply from Sadlier Senior Vice President, General Counsel, and Corporate Secretary Angela Dinger ("Ms. Dinger"). Ms. Dinger's letter indicated that Sadlier would no longer honor its agreement to provide the materials that Ms. Arbeiter had offered and Mr. Peterson had accepted. Ms. Dinger's letter indicated that Sadlier would not give him copies of any of the information he had requested, and would only allow him to look at (and not copy or receive copies of) Sadlier's meeting minutes and record of shareholders. In other words, the offer made by Ms. Arbeiter was a bluff and Sadlier was taken by surprise that Mr. Peterson was actually willing to visit in person to obtain the materials he requested.

28. On August 15, 2017, Mr. Peterson responded to Sadlier's letter. Mr. Peterson pointed out that Ms. Dinger's interpretation of New York law was grossly erroneous and was ignoring the New York common law right to inspect the corporation's books and records. Mr. Peterson also pointed out that Sadlier had offered to provide certain materials if he visited in-person, and that he had accepted this offer.

29. Sadlier ignored Mr. Peterson's August 15, 2017 letter, and also ignored follow-up requests sent on September 5, 2017 and on September 22, 2017.

6

30.     Mr. Peterson's efforts on behalf of Trondheim to exercise the common law rights to obtain basic information about its investment in Sadlier have been completely frustrated. Sadlier prevents minority shareholders from having access to up-to-date financial information, the shareholder list, and bylaws, among other documents. This prevented Trondheim from participating intelligently in the 2017 annual meeting and precluded any attempt to properly make a shareholder proposal or to make a nomination for the board of directors for that year and for subsequent years.

31.     Despite denying minority shareholder Trondheim an opportunity to meaningfully participate in it, Sadlier's annual meeting of shareholders (the "Sham Annual Meeting") presumably took place on June 29, 2017. Trondheim was never provided with the results of the Sham Annual Meeting.

32.     However, contemporaneously with the Sham Annual Meeting, Sadlier issued a press release entitled "William H. Sadlier, Inc., Announces Management Transition", in which Sadlier announced that "Frank Sadlier Dinger and William Sadlier Dinger, known to all as Ding and Bill, are the great-grandsons of Company namesake William H. Sadlier [and] intend to remain active as Board members and advisers. Moreover, the next generation of our family is well represented in top management by Ding's daughters, Angela Dinger, General Counsel and Corporate Secretary, and Melissa Gibbons, Director of Customer Service, and by my son, Bill Junior, Group Vice President."

33.     The family members that have installed themselves as in control of Sadlier have acted to repress shareholders who are not members of that particular family. Further, there is no benefit to Sadlier's other shareholders from having so many members of the "next generation" represented in positions of authority.

34. Rather than act for the benefit of its shareholders, Defendant is so clearly a nepotistic enterprise that it even boasts of the fact.

35. The Sham Annual Meeting was a successful effort by Sadlier's controlling shareholders to elevate family members who get to double-dip into profits that should rightfully belong to all shareholders. Minority shareholders such as Trondheim are prevented from access to information that would help them participate in corporate governance.

36. Mr. Peterson wished to attend the next annual meeting after the Sham Annual Meeting. A schedule conflict prevented him from doing so, but he arranged for counsel to attend the meeting that was to be held on June 21, 2018. As a courtesy, he sent an email to Ms. Dinger on June 11, 2018 informing her that Trondheim's counsel—a fellow member of the New York bar—would attend the meeting on Trondheim's behalf to observe and report back.

37. Ms. Dinger waited and then sent a letter on June 19, 2018 (only two days before the annual meeting) feigning confusion as to whether Trondheim was a shareholder of Sadlier and demanding a written power of attorney plus the right to review Trondheim's partnership agreement before she would allow Trondheim's counsel to attend the annual meeting. This made it impossible for Trondheim to have a representative at that annual meeting.

38. On August 8, 2018, Trondheim sent a formal books and records demand to Sadlier containing the affidavit referenced in BCL § 624(c) (even though no affidavit is required for a NY common law books and records request).

39. Sadlier responded through counsel on August 23, 2018 and offered to provide a fraction of what had been requested: only minutes of a smaller number of shareholder meetings, a list of shareholders, and past annual reports that Trondheim had already received.

40. Sadlier's position–which contradicts clear New York case law on point–is that shareholders have only a statutory right to receive books and records, and not the far broader common law right. Despite being presented with cases and specific citations regarding the broader common law right of shareholder inspection, Sadlier's response has been to totally stonewall and hide behind the narrower statutory right.

41. Over the past two years, Sadlier's financial results have significantly deteriorated. And as of early July 2020, Sadlier had not reported any financial results for the year 2019, despite a common law right for shareholders to receive financial results and even a specific statutory right to receive an annual balance sheet and profit and loss statement "within a reasonable time". As a result, on June 22, 2020, Trondheim sent the books and records demand letter attached as <u>EXHIBIT A</u>.

42. On June 29, 2020, Sadlier responded to say that it would "review and respond" to Trondheim's demand for books and records.

43. On July 13, 2020, Sadlier responded that it "respectfully declined to comply" with the books and records demand.

44. Later in July, Sadlier published its annual report for the year 2019. In a letter to shareholders, Sadlier management disclosed various negative trends and risk factors for the first time, including that:

   a. Sadlier's "business landscape has changed significantly over the last two decades. The numbers of Catholic Schools and their students has declined throughout the period";
   b. There had been a "major shift in the competitive landscape in the markets";
   c. Sadlier's business was experiencing "tumultuous times"; and

    d.  "[W]ith the declining Catholic School enrollments plus the impact of new technologies and the enablement of new digitally focused competition, including in some sectors competition from free online materials, our business has experienced sales erosion."

45.    The shareholder letter disclosed that at least as far back as 2017, company management "recognized these trends and the need for change," but they had never been disclosed to shareholders until now. However, despite supposedly "recognizing the need for change", Sadlier continued to engage in "business as usual" and made nepotistic succession the priority over hiring competent management to navigate the new challenges that faced the business.

46.    On July 31, 2020, Trondheim sent a second books and records demand letter attached as <u>EXHIBIT B</u>.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
**(New York common law right to shareholder inspection of books and records)**

47.    Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

48.    Under well settled New York law, shareholders of corporations have a common law right to inspect books and records for a proper purpose. The demands that Trondheim and Mr. Peterson sent in 2017, on August 8, 2018, on June 22, 2020, and on August 3, 2020 expressed proper purposes and requested records that were necessary to satisfy those purposes.

49.    As set forth above, Sadlier has chosen a variety of tactics to avoid satisfying Trondheim's requests for books and records under common law, including, but not limited to, feigning confusion about whether Trondheim is a shareholder, refusing to acknowledge that there exists a common law right to examine books and records of New York corporations, simply

ignoring the requests, and pretending not to be able to understand why Trondheim would need up-to-date financial information for the proper purpose of valuing its shares.

50.     Sadlier has failed and refused to provide any of the records which Trondheim has requested and to which it is entitled.

51.     Trondheim seeks a Judgment directing Sadlier to produce for inspection all of its books and records that have been requested by Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Statutory violation under §624 of NY Business Corporation Law)**

52.     Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

53.     The statutory right of inspection under §624 did not replace the common law right; it supplemented and expanded it.

54.     Trondheim's demands sent in 2017, on August 8, 2018, on June 22, 2020, and on August 3, 2020 included demands for books and records of Sadlier which Trondheim has an absolute, statutory right to receive.  This absolute right would apply, for purposes of illustration, but without limitation, to the shareholder meeting minutes and shareholder list which Trondheim demanded and also to the annual financial statements.

55.     Sadlier has failed and refused to provide any of records which Trondheim has requested and to which it is entitled.

56.     Trondheim seeks a Judgment directing Sadlier to produce for inspection all of its books and records that have been requested by Plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Rule 10b-5 of Securities and Exchange Act of 1934)**

57. Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

58. Sadlier committed the following conduct in violation of Rule 10b-5 of the Securities Exchange Act of 1934:

    a. Sadlier made material omissions in its annual shareholders reports by failing to disclose that (i) Sadlier's results were deteriorating precipitously, (ii) Sadlier was planning to re-invest nearly all of its cash flows into products with declining revenue, (iii) Sadlier makes tens of millions of dollars of annual payments (e.g. royalties, salary, compensation, and perquisites) to parties which may include "related parties" under generally accepted accounting principles, (iv) Sadlier is a "family jobs program" that includes a family member who is unable to perform her job functions appropriately, (iv) Sadlier is more focused on maintaining this jobs program than achieving returns (or even avoiding impairments of capital) for outside shareholders, and (v) Sadlier has been suffering "tumultuous times," and "sales erosion".

59. These omissions by Sadlier were material to Trondheim because, had Trondheim been aware of these omissions at the times they were known by Sadlier, Trondheim would not have purchased securities in Sadlier at the prices it paid. A reasonably prudent investor such as Trondheim would not buy shares in a company that was, in essence, a sinking ship whose captain and crew were more interested in diverting corporate resources towards making sure their own lifeboat was secure rather than righting the ship to ensure protecting the capital of outside and minority shareholders.

60. These omissions were made in connection with the sale of securities in Sadlier as discussed above and herein.

61. These omissions were made with knowledge, intent, recklessness, and/or purpose that Trondheim rely on them.  Sadlier knew about the omitted information before Trondheim purchased its shares.  Sadlier had a vested in interest in perpetuating the fraud because drawing in investors helps to infuse capital to maintain the family jobs program and nepotistic benefits scheme.

62. As discussed above and herein, Trondheim is an actual purchaser of the shares in Sadlier and has lost/is losing money due to the conduct complained of herein based purchasing shares at an inflated price due to the fraud on the market perpetuated by Sadlier.  But for this fraud on the market, Trondheim would not have purchased the shares at the price paid.

63. Trondheim seeks damages in the amount of the overpayment, attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Trondheim prays for Judgment in its favor and against Defendant awarding to it the following relief:

a. An award of compensatory damages in the amount to be determined at trial, but in an amount greater than $75,000.00 including attorneys' fees and costs;

b. An order enforcing Trondheim's shareholder inspection rights under New York statutory and common law;

d. An award of pre-judgment and post-judgment interest in the maximum amount allowed under the law;

  e.  An award of costs and expenses of this action, together with reasonable attorneys' fees; and

  f.  An award of such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all of its claims so triable.

Dated: New York, New York
    August 10 2020

        GOLDBERG WEG & MARKUS PLLC

        /s/ Steven A. Weg
       By: Steven A. Weg (saw@grlawpllc.com)
        14 Wall Street, Suite 2064
        New York, New York 10005
        (212) 697-3250
        *Attorneys for Plaintiff*